We're prepared to hear argument in Liberty Mutual v. JM Smith. Ms. Foggin, happy to hear from you. Thank you, Your Honor, and may it please the Court. My name is Laura Foggin and I represent Liberty Mutual Fire Insurance Company. I would like to reserve four minutes for rebuttal. In this appeal, the Court is asked to decide whether Liberty Mutual has a duty to defend JM Smith in a suit brought by the West Virginia Attorney General alleging that JM Smith engaged in a persistent course of conduct in violation of controlled substances laws, contributing to an epidemic of prescription drug abuse and resulting in hundreds of millions of dollars in costs to the state of West Virginia, according to the complaint. Liberty Mutual and JM Smith's insurance agreement provides that Liberty will defend a suit seeking damages because of bodily injury or property damage caused by an occurrence. An occurrence means an accident, including continuous and repeated exposure to the same general conditions. South Carolina law, which the parties agree controls, provides that an accident is an unexpected happening or event which occurs by chance and usually suddenly with harmful result not intended or designed by the person suffering the harm. And this articulation of the standard is found repeatedly in South Carolina Supreme Court cases, including Auto Owners v. Newman and Collins Holding Corporation v. Wausau. In this case, there can be no coverage because West Virginia's complaint against JM Smith does not allege an unexpected happening or event that occurs by chance. The complaint alleges defendants were on notice of a growing epidemic from the abuse of prescription drugs which they supplied and of the quantities and frequencies with which these drugs were distributed to West Virginia entities. It alleges defendants have violated West Virginia statutes and regulations which govern controlled substances. You know, it's interesting these insurance contracts because the words never mean exactly what they say. Occurrence means accident and bodily injury includes property damage and everything. But I get the lingo. The question I have is doesn't an accident encompass negligence? It may. But as this court held... Well, why wouldn't it? It doesn't, Your Honor, in a number of circumstances. And this court's decision in C.Y. Thompson is quite clear. And I quote, it cannot be held that negligence is synonymous with accident, unquote. So negligence and accident are not synonymous. And I think that's the error that the court below made and that JM Smith urges on the court. Well, what would it encompass in this kind of policy? What it encompasses is an unexpected happening or event. So it would encompass a mislabeling of drugs that were sent. That would be negligence. That would be negligence. It would encompass a misshipment. They accidentally were shipped, a misshipment. The drugs were accidentally shipped to the wrong pharmacy. That would be negligence. It would encompass contamination of a shipment. So every accident you've told me involves negligence. Your Honor, they do. They do involve negligence. But not all negligence is an accident. Okay. Which negligence counts and which doesn't? And how is a policyholder supposed to know? Well, Your Honor, a policyholder knows because the definition of occurrence is clearly defined in the policy. And it requires an accident. And a persistent course of deliberate conduct in regular business activities is not an accident. But every example of an accident you've given me has been an example of negligence. It has been, Your Honor. I think you have to have negligence to have an accident. But it doesn't follow that every instance of a negligence allegation in a complaint means there is an accident under the policy. If I may. Well, that's going to be kind of hard to sort out, isn't it? We're going to try to decide what's covered negligence and what isn't covered negligence. I mean, that's going to involve, is that going to involve an awful lot of litigation? Your Honor, I don't think it does involve an awful lot of litigation. I think the standards already are well set in the law of South Carolina in particular, but generally in the insurance context. I'll give you an example. The Virginia Supreme Court has a recent decision called AES. The facts of that decision are allegations that a course of conduct contributed to global warming. And the court said there's no occurrence. And the underlying allegations of the case, which the court is probably familiar with and went to the Supreme Court, are tort allegations. So they're negligence allegations. But it's a regular, ongoing course of business that isn't an accident. It doesn't happen by chance. It happens by design. And that is what is not an accident or an occurrence under the policy. So in this case, if a distributor of drugs ships in the ordinary course of business as they do every day to a pharmacy, licensed pharmacy, licensed pharmacist in a given state, and those pharmacists don't comply with the law in terms of distribution of the drugs, that's not an accident, I take it, in your view? You're right, Your Honor. It's not. Because? It's not a chance event. And it's not alleged in the underlying complaint by the state of West Virginia to be a chance event. Count six. I beg your pardon? Count six. Count six? Sure sounds like a lot of negligence in there to me. Count six is, I believe, the public nuisance. I'm looking at it. Count six, negligence. Defendants have a duty to exercise reasonable care. They've reached their duty. They were negligent in failing to guard against third-party misconduct. They've imposed an unreasonable risk. It was combined with their negligent acts. Sounds an awful lot like negligence to me. It certainly does, and it certainly is negligence. But this goes back to the fact that not all negligence is an accident. Let me answer two parts of your question. Because? I beg your pardon? You're going to tell us why because it's not an accident? I am going to tell you why this negligence is not an accident. Yes, Your Honor. So here, it is not a chance event that flooding the West Virginia with excess prescription drugs feeds pill mills and results in the injuries complained of. And, in fact, the laws that J.M. Smith, according to the complaint, engaged in a persistent course of conduct of violating are laws that specifically require it to know its customers. And this is in the joint appendix at 149, paragraph 25 of the complaint. Including knowledge of the prescriptions, the average prescriptions filled per day, the percentage of controlled prescriptions in proportion to the overall number of purchases at the pharmacy. Hold on a second. So they were negligent in monitoring the pharmacist's conduct that they shipped to. They illegally failed to meet the standards of the Controlled Substances Act persistently over time. It's a violation of law. It's alleged that they willfully, consistently, persistently violated the law by not adequately monitoring those purchases. You could also violate the law and be negligent in an automobile accident if you were exceeding the speed limit and ran into somebody. You could. And it would be an accident because it would not be your routine business conduct. This is routine business conduct. That's very different. This case involves routine business conduct in deference to your colleague's question. And that's why I believe this case is different from the negligence of an individual automobile accident or an individual happening by chance. It did not happen by chance that prescription drugs in excess of the amounts that were legally to be sent to West Virginia were sent to West Virginia. This may help me at least to understand what's going on. So if the whole allegation, if the only allegation in this case were that the defendants were negligent in failing to guard against third-party misconduct, the pill mill physicians and the pharmacists and their staff, that's the whole allegation. Is that an accident? Your Honor, I believe it probably is, yes. That is an accident. So what you're saying, you're not contesting that if there is a freestanding negligence allegation in this complaint, it may well be an accident. You're saying there's no such thing in this complaint. I'm not. What I'm saying is that although this complaint may include a freestanding negligence count, that doesn't change the fact that the complaint as a whole is based unequivocally on a course of conduct that is persistent business practice in violation of the law. Why isn't it based on both things? Why isn't it just pleading in the alternative? You did this. You didn't pay attention to where your pills were going. We don't know. We haven't done discovery yet. Maybe you did it on purpose. Maybe you did it negligently. We couldn't possibly know at the stage at which we filed this complaint. So we're pleading both. And if they plead both things, isn't there a duty to defend? There might be. And in fact, that distinction could be dispositive. West Virginia didn't do that here. It didn't plead in the alternative. It didn't assert different facts. And an alternative factual basis for a negligence cause of action. Indeed, it explicitly incorporated into every count in the complaint the same facts that underlie the entire lawsuit. So this is a lawsuit that as a whole is about a course of conduct that is not an accident. So when it says that the defendants were negligent in not acquiring and utilizing special knowledge and special skills, there's some statute that says they have to utilize special knowledge and special skills? Your Honor, there is a controlled substances statute that says that they have to do certain things. And that includes, for example, being aware of what the pharmacies and pharmacists are doing. Right. Can they be negligent in the course of doing and discharging that duty under the statute? Whether they can under the statute be negligent, I would assume they could be negligent under the statute. I don't know if the level of negligence requires under the statute is necessarily willful and wanton or some enhanced standard of negligence. What I do know is that that is precisely what is alleged here. West Virginia alleged willful conduct. That is, purposeful, ongoing course of conduct. But that's not entirely true because count six aside, when you read this complaint, the negligence and intentionality are all scrambled up together. And as Judge Harris points out, you can't really forecast at this point how it's going to shake out. But state law bends over backwards to find a duty to defend because they predicated on potentiality. And there's certainly the potential here of finding a liability based on negligence. And also state law says if one count is based on negligence in a complaint, that's enough to invoke the duty to defend. So you've got state law, which is partial to the duty to defend, more partial to the duty to defend than to the duty to indemnify. That's later on down the road. But so you've got that against you. And the other point, which you're kind of gliding over to, is the fact that J.M. Smith is one of 12 defendants in a class action suit. And I don't know how liability or negligence and intentionality is going to be apportioned between those 12 defendants. And it is at least of interest to me that the complaint doesn't isolate J.M. Smith and contain factual matter that J.M. Smith did this and that intentionally. As far as I know, the intentionality may be on the part of those who placed the orders. That is, the pharmaceutical companies and individual physicians. As far as I know, J.M. Smith may have been handling a huge number of orders from a huge number of pharmacies, from a huge number of physicians, and rather than, when you say a course of conduct, you act as if the negligent orders were the only orders that J.M. Smith filled. But that can't be true, or at least we don't know that at this stage. We don't know so much at this stage. So why should we negate the duty to defend right up front when we don't know how it's going to shake out between all the different companies, between negligence and intentionality, between those who placed the order and those who filled the order, and you want us to say, okay, let us head for the exits. Now, that bothers me from the standpoint of an insured. You knew the business you were insuring when you charged that premium. Your Honor, if I may, I'd like to reserve my time for rebuttal, but I will say that I think the complaint does allege substantial contribution to pill mills, and further, South Carolina is clear. The law is unequivocal in Collins, and negligence count in a complaint does not necessarily create a duty to defend. The negligence is sprinkled all through the complaint. It's like fairy dust or something. They just put it all over it. They just took it and sprinkled it all over the different counts. Your Honor, I don't believe the complaint can be read to be about negligence. I think the allegations are also clear of intentional conduct, but I want to save my time for rebuttal, if I may. Thank you. Thank you. Yes, sir. Good morning. May it please the Court. George Tsigarakis on behalf of James Smith Corporation and Smith Drug Company. The appellee is here. I don't think I've ever been preceded by the fairy dust comment, but I'm happy to be the negligence fairy on this one, Your Honor. If I could address First Judge Agee's question about whether you could violate or whether West Virginia alleges you can violate the West Virginia Uniform Controlled Substance Act negligently. And the answer is it does allege that. Apparently under the West Virginia Uniform Controlled Substance Act, according to the complaint, if you fail to diligently respond to suspicious orders or fail to have effective controls and procedures, both of which sound as if they've been sprinkled with negligence fairy dust, could be negligent conduct, and that would be a violation of the Uniform Controlled Substance Act. And so when you have a persistent, as the word used in the complaint, course of conduct of failing to have effective controls, it just means shipments over and over again, which by itself doesn't mean intentional conduct. In some respect, it wouldn't be any different than the policy language saying that an occurrence is a continued and repeated exposure to the same conditions. And so the persistence aspect shouldn't automatically equate anyone's mind with intentional conduct. The cases, as the Court pointed out, the duty to defend is broad, and state law does bend over backward to find a duty to defend for policyholders. The cases relied on by Liberty Mutual don't change the duty to defend analysis, which is if there's any possibility of coverage under a complaint, then the duty to defend is triggered. All those cases say, including Collins, is that a negligence cause of action by itself isn't enough. You need to actually substantiate the cause of action with well-pled allegations. The cases like Collins and the others... All that says is there's no per se rule. If the term negligence is used in a complaint, that doesn't guarantee... That's right. And I think the Court and counsel are getting hung up on what kind of negligence is not an accident. And really the question is what kind of negligent cause of action does not allege an accident? And the answer to that is, frankly, what Collins did. Collins had a negligent representation in the case involving the intentional manipulation of gambling machines to pay out illegal jackpots and then advertising those illegal jackpots. There was a negligent misrepresentation claim in that case. And the Court looked at it and said, well, what is supporting that negligent misrepresentation claim? And found that all the negligent conduct of manipulation of machines and advertising illegal jackpots were incorporated in the negligent count, as well as the statement that Collins sold, leased, and distributed machines that were equipped in a manner to permit manipulation and that the machines were actually configured to be used in a manner that violated laws. And that was it. There's nothing negligent about those allegations. And the Court found there's no possibility for coverage at the end of the day on this negligent cause of action. It's only intentional conduct at issue here. And that was the situation with all the cases relied on by Liberty Mutual. It doesn't change the analysis. Those cases had clear, intentional, inherently injurious conduct. The point is we don't have enough of a crystal ball to say that there's no possibility of coverage at this stage of the proceeding. Exactly. We're just, you know, we're just not that clairvoyant. And you don't need to be clairvoyant. No one needs to be clairvoyant at this juncture because the West Virginia Attorney General makes clear what his intentions are on behalf of the state of West Virginia. In the prayer for relief, he outlines what West Virginia hopes to recover in this case, and he says they want losses sustained as the proximate result of both negligent and conscious violation of the Uniform Controlled Substance Act, as well as damages and losses sustained as the proximate result of defendant's negligence in marketing, promotion, and distribution of controlled substances in West Virginia, which is that count six, which is the negligence count that the Court focused on earlier. And so we don't need to be clairvoyant at this point. West Virginia has asserted a cause of action for negligence and has indicated by the prayer of relief that they intend to seek damages because of that. You have your argument, and I'm going to ask my co-panelists if they have any further questions of you. Sorry, I just have kind of a procedural question. What's up with bodily injury? What are we supposed to do with that? It looks like you won on bodily injury too, but there's no discussion of it. It doesn't seem like it was briefed. Well, it wasn't briefed, Your Honor. The issue of bodily injury is this. Our position is that Liberty Mutual's waived the ability to argue that before this Court because they didn't argue it below. They moved for summary judgment on what they called a threshold issue, the existence of occurrence or the absence of an occurrence in the complaint. I thought they asked the Court specifically not to rule on it. That's one interpretation of what happened in the oral argument. I'm sure counsel has a different view. I think Your Honor's correct. They moved on one ground, which they called a threshold issue. In a footnote in the brief, they do raise bodily injury along with a number of different other grounds that they were not moving on. So rather than being a reservation of rights in that footnote, however, whatever weight that gives you, actually that footnote just identifies the panoply of issues they were not moving on at the time. They were only moving on the occurrence issue. At oral argument, Judge Koehn asked counsel about the bodily injury issue, and counsel responded that it had not been immediately presented to the Court, and if the Court were to rule on anything against Liberty Mutual, that issue should be reserved because it had not been fully briefed. It hadn't been fully briefed, and in the District Court it wasn't fully briefed. The Court's decision did not address bodily injury. It turned on the threshold issue of whether there was occurrence. After that decision, Liberty Mutual filed a Rule 54B seeking certification in which they characterized it as a final resolution on the duty to defend and the ultimate disposition of that issue. So I think the ship has sailed insofar as the bodily injury argument is concerned. If the Court would like, I can address that issue. So you think that the District Court granted summary judgment to you on the full duty to defend, occurrence plus bodily injury, on a waiver theory? Is that your best guess about what happened there? Well, we moved for summary judgment on the issue. On what issue? On the full issue? On the full issue. Which incorporates bodily injury. Which would incorporate bodily injury, and the District Court granted that motion. And what Liberty Mutual did was reserve the right, presumably in the District Court, after the decision to attack the duty to defend on the bodily injury argument. But now they seek, they didn't do that there, and now they seek to raise that issue here. And so I'm not sure that it's a ripe issue. And you've made an argument on the merits with respect to the bodily injury point, too. On appeal, yes, we have. We've addressed that. If the Court has any questions about that, we believe that, looking at the complaint, it certainly does allege bodily injury. There's no requirement under South Carolina law that the actual plaintiff be the party suffering the bodily injury, and actually the policymaker— I gather the bodily injury you allege would arise from, to use the term of art, prescription drug addiction and abuse. Well, that's what the Attorney General says. The West Virginia itself has incurred costs associated with the bodily injury of addiction, including hospitalization, emergency medical personnel, and the like. West Virginia has been suffered. They've paid money because of the bodily injuries to its citizens. And that's what the allegation of the complaint is, and that would trigger coverage here. Hold on a second. I will. Thank you. Ms. Fargan, pleased to hear from you in rebuttal. Thank you, Your Honor. If I could start where Judge Harris left off. If we just assume for purposes of argument that the Court were inclined to affirm the judgment of the District Court, what, if anything, would be said about bodily injury in that opinion? Your Honor, I think in order to affirm the decision below, the Court has to reach the bodily injury issue. It was obviously encompassed within the cross-motion of J.M. Smith. Liberty Mutual did seek to limit the briefing and the argument solely to the threshold issue of occurrence. J.M. Smith cross-moved on the duty to defend as a whole. It briefed the bodily injury issue in its motion papers below. And while Liberty Mutual urged the Court to reserve judgment on that and not take it up, the Court did take it up. And that oral argument is evident. The Court is keenly aware of it. The judge himself brings it up to both parties repeatedly. And both parties argue it repeatedly, including the very points that are urged in the papers before this Court. And the judge below says to counsel for J.M. Smith, and this is at the joint appendix at 326, I understand your position about the bodily injury component. So he plainly went with them on it, so to speak. We argued that, Liberty Mutual argued that there was not a demonstration of bodily injury, that medical monitoring did not constitute a bodily injury claim, and that there was a fundamental difference between the cases that J.M. Smith cited, which involved individual plaintiffs who suffered bodily injury seeking medical monitoring, and this circumstance where a state is claiming to recover for economic harm. Something fundamentally at odds with an individual's bodily injury claim. Do you differentiate between the actual individual who has the hospital bill to pay and the state of West Virginia that makes the Medicaid payment? And not only do I, Your Honor, that's correct, I do. And not only do I, but so did the Federal District Court in West Virginia that was ruling on these very claims, where there was a dispute about whether the Attorney General's original complaint involved any recovery, bodily injury recovery, on behalf of its citizens. And that court said, and I'm quoting, the complaint seeks to alleviate some of the burden imposed on the state's coffers in addressing its rehabilitative goals, and in West Virginia's own words, there are no monetary damages sought based on bodily injury of its citizens. Instead, it was something else. It was a regulatory economic loss kind of interest that the state was asserting, and is asserting, in its bill. But they're not asking the state of West Virginia, they didn't ask them to be reimbursed all their Medicaid expenses. I beg your pardon, Your Honor, I missed the very beginning part of your question. The state is not asking to be reimbursed Medicare expenses? I don't know whether that could potentially be encompassed in the allegations of the complaint, but what the state has said is... Well, isn't that a pretty significant factor? I mean, you can talk about economic loss generically as some impediment to the economy and that sort of thing, but you would think that they would be putting on evidence as to, well, this is how much we paid for Medicaid, and here's the PDF that has all the list of folks, here's how much incarceration expense we incurred, here's the list of folks, and it seems like the line between the injury cause there and some generic form of economic loss is sort of clear. Your Honor, I think what the state is seeking to recover is a generic form of economic loss. What it's seeking to recover are tax dollars that were spent in addressing a problem. What's the form of the underlying litigation? The plaintiff in the underlying litigation. It's a suit brought by the Attorney General of the state of West Virginia on a variety of accounts, which seeks to recover the costs that the state has outlaid as a result of the epidemic of prescription drug abuse in West Virginia. Are you saying there's no possibility whatsoever that any individual plaintiff would recover anything? You're correct. There is no possibility whatsoever that any individual plaintiff will recover. The state does not assert any claim on behalf of any individual citizen, and in fact, Your Honor, as the briefing before this Court evidences, even the Medical Monitoring Fund, which is what James Smith has seized on as its closest relationship to bodily injury, has been dropped by the state of West Virginia in its amended complaint. So there is nothing, and in fact, the Cincinnati v. Ritchie Enterprises case, which was submitted on a 28-J letter by Liberty Mutual, found that this very complaint did not allege bodily injury after that account was dropped because there was simply nothing that evidenced a  claim. I still have a question as to whether this was even raised or discussed below. It was, Your Honor. Excuse me. If it's in a footnote somewhere and the rest, I mean? The only place it appears is not simply in a footnote. That is, we opposed in argument, and we opposed on the merits, the idea that the entire complaint could be addressed on a duty to defense. There's a little bit of a trailer to me. I mean, the thing appears second in your brief, and it certainly wasn't the gravamen of your argument before this Court. And I'm just wondering whether it really was, given the place of this particular argument on appeal and given the questions I have about whether it was raised below, I'm wondering whether the argument has been waived. Your Honor, I believe under the jurisprudence of this Court, it clearly has not been waived. The trial court unquestionably was well aware of the issue, addressed the issue repeatedly in questions. If you look at the oral argument transcript, it is probably the issue on which the most Wait a minute. This was on cross motions for summary judgment. Where did you brief it? Your Honor, we did not extensively brief the question of bodily injury. J.M. Smith briefed it in its brief, claiming that it was present. What I'm saying is, it's your burden. You're trying to defeat a duty to defend here. And if the case is below on cross motions for summary judgment, that's a winning argument for you, you think. And yet, it's not briefed? Your Honor, we Do you understand why that's problematic? Your Honor, what we said to the court was, we sought to reserve it. We requested permission to file additional briefs on that issue. It wasn't briefed in the initial cross motions for summary judgment. Your Honor, in the cross motions for summary judgment, I think arguably there are some sentences that encompass it in saying there's no occurrence. It wasn't briefed in the cross motions. J.M. Smith briefed it. Liberty Mutual did not devote us any section of its underlying brief to this topic. But it argued it to the court. But I read the district court transcript, and it really sounded like, I understand it came up, but it was like the district court had to drag it out of you. Like, don't you people understand there was a bodily injury claim here, too? And even then, wasn't the only discussion about the medical monitoring claim? Is there some part in the transcript where you discussed the other? There is, Your Honor. Counsel for J.M. Smith basically contended. J.M. Smith contended, and you argued in response. Because I see J.M. Smith contending both the addiction theory and medical monitoring, and you responding on medical monitoring. Your Honor, I think I did respond to the court that we believe there was no bodily injury. But there's no argument about why, like this Medicaid point and whether addiction, I mean, because the complaint talks about how much this is going to cost to treat all these patients in the hospital, and there's no discussion or oral argument about whether that might suffice. Your Honor, there is discussion about the fact that this is a suit by the state, that it is fundamentally different from a suit by individuals seeking to recover for bodily injury. No, I understand that. But this argument that, look, you're asking in the complaint, you're talking about how much at the Charleston area, West Virginia is talking about how at the Charleston area medical center, 20% of the patients coming through have these addiction problems, and there's not money, and there's no medical insurance coverage. I mean, there was no argument in the district court that wasn't about medical monitoring and that was about this kind of argument, was there? Your Honor, I believe the argument that this is a complaint brought by the state and not by individuals addresses that in the sense that we believe what the state has sought to recover is economic loss and that South Carolina law and the law generally is clear that economic loss, the dollars spent by the state that it seeks to recover in all of that that Your Honor has just described, is not what the policy talks about when it says bodily injury is sickness or disease or death sustained by a person. The problem that we're having is you're trying to have something emerge full-blown. On appeal. At the end of an appellate argument, it wasn't fairly presented to the district court below. And that, we've been over it and over it and over it, but that is the difficulty, is that you want something to just emerge full-blown, and the district court wasn't given a similarly fair shot at it. And that is our problem. We've been over it and over it. We've been around it. We've chewed that bone. Your time has expired. I'll give you five seconds to respond. Your Honor, the district court plainly was aware of this issue, apprised of this issue, and it was addressed in oral argument on both sides specifically on the ground I urge here, which is that fundamentally the state suit is different from an individual claim for bodily injury. And the transcript says almost those exact words from me below. Thank you. Thank you. Appreciate it. Thank you.
judges: J. Harvie Wilkinson III, G. Steven Agee, Pamela A. Harris